UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

**SARAH PARRA,**

    Plaintiff(s),

v.

**LEXISNEXIS RISK SOLUTIONS FL INC.,**

    Defendant.

_____/

## COMPLAINT

Plaintiff, SARAH PARRA, by and through the undersigned counsel, hereby sues Defendant, LEXISNEXIS RISK SOLUTIONS FL INC. ("Defendant"), and in support thereof avers as follows:

### GENERAL ALLEGATIONS

1. This is an action by the Plaintiff for unpaid wages and damages under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"); the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, *et seq*. ("FCRA"); and the Equal Pay Act Of 1963, 29 U.S.C. § 206, *et seq*. ("EPA").

2. Plaintiff was at all times relevant to this action, a resident of Broward County Florida, within the jurisdiction of this Honorable Court.

3. Defendant, LEXISNEXIS RISK SOLUTIONS FL INC., is a Florida Limited Liability Company conducting business in Miami-Dade County, Florida, where Plaintiff worked for Defendant and at all times material hereto was and is engaged in interstate commerce.

4. Venue is proper in Miami-Dade County because all of the actions that form the basis of this Complaint occurred within Miami-Dade County and payment was due and owing in Miami-Dade County.

5. Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

6. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. Plaintiff worked in the Insurance division for LexisNexis since 1997 home based out of Atlanta, GA.

8. In April 2015, Plaintiff took a personal decision to relocate back to South Florida to be closer to her family and accepted a job in the Business Services division of LexisNexis.

9. Plaintiff was given a "Project Manager" title but performed more product analyst functions with zero authority to make any decisions without consulting her manager. Plaintiff could not hire or fire other employees.

10. Plaintiff worked approximately 60-65 hours per week.

11. At all times material hereto, Defendant had or should have had full knowledge of all hours worked by Plaintiff, including those hours worked by Plaintiffs in excess of forty (40) in a given work week.

12. Plaintiff was not paid at the proper overtime rate for hours worked in excess of forty (40) per week, as proscribed by the laws of the United States.

13. During her time spent in this division, Plaintiff walked into a situation where the manager got demoted and the entire team got disbanded and reorganized in January of 2016.

14. Through that time, Plaintiff had 3 different managers in the span of 6 months and was classified and put in a position and that was neither her skill set nor her desired career path. Plaintiff tried to make the best of a difficult situation while trying to look for other job opportunities in other areas of the company.

15. In February 2016, Plaintiff went out on leave for about a month for needed surgery.

16. In March 2016, when Plaintiff came back from being out on leave, Plaintiff reported directly to the Senior Vice President, Mark Luber as a part of a massive reorganization. Plaintiff's interaction with Mark was very little. Plaintiff had one single conference call with the new team Plaintiff was a part of to talk about the newly formed positions.

17. Following that call, Plaintiff scheduled personal time on Mark's calendar to express her concern that she was not in the right role where Plaintiff was slotted within the organization and Plaintiff wanted to make sure she was doing the best work she can possibly do for the organization. Mark wasn't really interested in taking any further action and after that meeting; they never had a single meeting or any interaction other than through email regarding statuses of projects.

18. In mid-April 2016, the go-to-market project team that Plaintiff became a part of through the reorganization then inherited a new manager named Cheryl Franklin. Since the very beginning of the interaction, Cheryl was a very abrasive and biased manager and ended up forcing half of her team to leave (which were long-time career people with the company).

19. Plaintiff reached out to Cheryl on several different occasions for help regarding various projects that Plaintiff inherited from her prior responsibilities that were falling apart and never once did Plaintiff receive any help.

20. When Plaintiff scheduled time with Cheryl to discuss her career path, Plaintiff tried to explain why Plaintiff wanted to apply for other jobs within the company that are better suited to her skill set to better serve the company, but Cheryl told Plaintiff it would be better if Plaintiff left the company.

21. On or about June 4, 2017, Cheryl notified Plaintiff that she is coming into Boca Raton and that Plaintiff was required to report to the office there on June 5, 2017. Plaintiff normally worked from home 100% of the time.

22. The following day, on or about, June 5, 2017, Plaintiff explained to Cheryl that, not only was her house under a severe flood warning and it was not safe to drive, but Plaintiff was also not feeling very well. Cheryl still insisted on having the meeting so Plaintiff asked if they could at least have the meeting via phone like all of the meetings they had on daily basis. Cheryl never responded.

23. On or about June 6, 2017, Plaintiff was vomiting and had a fever and Plaintiff sent Cheryl an email and left a voicemail explaining that she was still sick and would be out for the rest of the week. Cheryl never even responded to see how Plaintiff was feeling or even if her family was okay from the flooding.

24. On or about June 9, 2017, Tony Caram, a coworker Plaintiff had been working on a project with, called and texted to see if Plaintiff was okay. Plaintiff received no call or text from Cheryl.

25. On or about June 12, 2017, Plaintiff left another voicemail message for Cheryl indicating that Plaintiff was not feeling well and would be out for a couple more days Plaintiff also reached out to

two coworkers about a meeting that they had scheduled to inform them Plaintiff could not participate due to illness.

26. Cheryl never called back but on June 14, 2017 all of Plaintiff's access to the programs she needed to work had been shut off and a policy had been pushed to her phone to remove all phone contacts and text messages.

27. Plaintiff called the only main number Plaintiff had in memory (678-694-6000) and did a dial by name to leave a voicemail message for Cheryl. She never called Plaintiff back. Plaintiff also used that number to reach the HR department who told her they would research what was going on and get back to her.

28. That following week, Plaintiff received a letter referencing that her benefits had ended. Plaintiff was dumbfounded. It had a number to call if Plaintiff had questions (877-734-1938). Plaintiff called that number several times that week trying to understand what happened.

29. From June 18 through June 26, 2017, Plaintiff would call that number several more times. Finally, on June 27, 2017 at 11:02am, Plaintiff got a call back from a person named Jeffrey Hahn who told her that she was terminated for not showing up to work.

30. Plaintiff reiterated the entire history to him along with her concerns and fear of Cheryl and he did nothing with it. Plaintiff requested on that phone call that he send her a letter in writing stating why Plaintiff was terminated. Plaintiff then followed up with an email reiterating the fact that Plaintiff did not resign and Plaintiff never wanted to leave the company.

31. Importantly, no similarly situated male employee was ever terminated for calling out sick for a meeting. Moreover, in the years prior to this, Defendant had forced out many older female employees and managers without cause.

32. Additionally, Plaintiff submits that, despite her extensive qualifications and experience, she was paid substantially less than similarly situated male employees. Specifically, Plaintiff identifies the following comparators among others:

33. **Robert McConn,** Director of Product Management: He had the exact same position as Plaintiff in terms of job description, though Plaintiff had more overall responsibility in terms of review. He was responsible for about $34 million in product revenue and Plaintiff was responsible for about $74 million in product revenue. Nevertheless, Robert (Bob) was promoted to Director and Plaintiff was given the title of Project Manager. Plaintiff also received better performance reviews then he did, received countless awards that he did not, had more years of industry and company experience, more education than he did, yet he made significantly more than Plaintiff.

34. **Ramesh Chellato,** Manager of Product Management: He was promoted to Plaintiff's same level and also made significantly more money than she did, despite the fact that Plaintiff also received better performance reviews then he did, received countless awards that he did not, had more years of industry and company experience, and more education than he did.

35. **Christopher Shyrock,** Manager of Product Management: He was at Plaintiff's same level but made significantly more money than she did despite having less experience, less company knowledge and experience, and far less education and training.

36. **Anthony (Tony) Caram,** Product Manager: He was a level below Plaintiff in her role as Manager. He had less education, experience, and tenure in the company and made significantly more money than Plaintiff.

37. These male employees performed substantially similar work under similar working conditions as Plaintiff.

38. The increased pay that males received was not based on superior skill, education, or experience, or any other legitimate factor.

## COUNT I
### *Discrimination in Compensation*
### *Equal Pay Act of 1963, 29 U.S.C. § 206, et seq.*

39. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 38 of this complaint as if set out in full herein.

40. Plaintiff belongs to a protected class; she is female.

41. Plaintiff's job functions with Defendant were and are of equal skill, effort, and responsibility as the job functions of similarly situated male employees, and they were performed under the same or similar working conditions.

42. During all relevant periods, Plaintiff received wages lower than most if not all, of Defendant's similarly situated male employees wages while performing the same or substantially more work than her male coworkers.

43. Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the same or substantially more work than her male coworkers.

44. Defendant violated the EPA and Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

   A. Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally and with reckless disregard for Plaintiff rights;

   B. Award Plaintiff actual damages in the amount shown to be due, with interest; and

   C. Award Plaintiff an equal amount in double damages/liquidated damages; and

   D. Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

E. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
### *Gender Discrimination in Violation of the FCRA*

45. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 38 of this complaint as if set out in full herein.

46. Plaintiff is a member of a protected class under the FCRA.

47. By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's disability and subjected the Plaintiff to gender-based animosity.

48. Such discrimination was based upon the Plaintiff's gender in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is female.

49. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's disability was unlawful but acted in reckless disregard of the law.

50. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

51. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

52. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

53. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued

discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and/or federal law.

54. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to state and/or federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

55. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

- A. Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;
- B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;
- C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;
- D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;
- E. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT III
### *Wage & Hour Federal Statutory Violation*

56. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 38 of this complaint as if set out in full herein.

57. This action is brought by Plaintiff to recover from the Defendant unpaid minimum wage and/or overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of the FLSA.

58. At all times pertinent to this Complaint, Defendant had two or more employees who regularly handled goods and/or materials which had been sold and transported from across state lines of other states, and the Defendant obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.

59. Upon information and belief, at all times material hereto, Defendant's annual gross revenue exceeded $500,000 per annum on its own, or as part of a joint enterprise with the other corporate Defendant named herein, or which are as of yet unknown but will be revealed through further discovery. To the extent that Defendant operated as part of a joint enterprise, it did so with corporate entities that performed related activities, under the common control of the individual Defendant, and for common business purposes related to the work performed by Plaintiff for Defendant.

60. By reason of the foregoing, the Defendant is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3

(r) and 3(s) of the FLSA, 29 U.S.C. § 203(r) and 203(s). Defendant's business activities involve those to which the FLSA applies. The Plaintiff's work for the Defendant likewise affects interstate commerce.

61. Plaintiff seeks to recover for unpaid wages accumulated from the date of hire and/or from three (3) years from the date of the filing of this complaint.

62. Defendant knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of minimum and/or overtime wages as required by the FLSA and remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendant as set forth above. As such, Plaintiff is entitled to recover double damages.

**WHEREFORE**, Plaintiffs respectfully pray for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the FLSA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

B. Award Plaintiffs actual damages in the amount shown to be due for unpaid wages and unpaid overtime wage compensation for hours worked in excess of forty (40) each week, with interest;

C. Award Plaintiffs an equal amount in double damages/liquidated damages;

D. Award Plaintiffs the costs of this action, together with a reasonable attorneys' fees; and

E. Grant Plaintiffs such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: 5/13/19

Respectfully submitted,

_____
Anthony M. Georges-Pierre, Esq.
Florida Bar No. 533637
agp@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler St., Suite 2200
Miami, FL 33130
Telephone: 305-416-5000
Facsimile: 305-416-5005